**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **POTOMAC RIVERKEEPER, INC.** | ) | |
| **d/b/a POTOMAC RIVERKEEPER** | ) | |
| **NETWORK, ET AL.** | ) | Civil Action No. 1:20-cv-00778 |
| *Plaintiffs*, | ) | Judge Ellen L. Hollander |
| | ) | |
| **v.** | ) | |
| | ) | |
| **VERSO CORPORATION, ET AL.** | ) | |
| *Defendants*. | ) | |
| | ) | |

**JOINT MOTION FOR ENTRY OF CONSENT DECREE**

Plaintiff Potomac Riverkeeper, Inc., d/b/a Potomac Riverkeeper Network ("Plaintiff"),

Plaintiff-Intervenor Maryland Department of the Environment ("Plaintiff-Intervenor"), and

Defendants Verso Corporation and Verso Luke LLC ("Defendants," and together with Plaintiff

and Plaintiff-Intervenor, the "Parties"), by and through the undersigned counsel, respectfully

move this Court to enter the accompanying Consent Decree. In support of this motion, the

Parties stipulate and agree as follows:

1.     Plaintiff is a 501(c)(3) non-profit organization whose mission is to protect the

public's right to clean water in rivers and streams, to stop pollution, to promote safe drinking

water, and to enhance the public use and enjoyment. Plaintiff is a "citizen" authorized to

commence a civil action under the Resource Conservation and Recovery Act. 42 U.S.C. § 6972.

2.     Plaintiff-Intervenor is a State agency within the Executive Branch of the State of

Maryland that is charged with the responsibility to protect the environment and enforce the

State's environmental laws. Plaintiff-Intervenor is also a "citizen" authorized to commence a

civil action under the Resource Conservation and Recovery Act. 42 U.S.C. § 6972.

3.      Defendants are incorporated under the laws of Delaware and are doing business in Maryland. Defendants own and operate the Luke Paper Mill located in Luke, Maryland, and Beryl, West Virginia, with facilities spanning the North Branch Potomac River.

4.      On March 24, 2020, Plaintiff filed a Complaint for Injunctive Relief and Civil Penalties against Defendants, alleging that Defendants had violated, and are violating, the Resource Conservation and Recovery Act by contributing to the past or present handling, storage, treatment, transportation, or disposal of solid waste which may present an imminent and substantial endangerment to health and the environment.

5.      On March 27, 2020, Plaintiff provided an electronic copy of the Complaint to the Attorney General of the United States and the Administrator of the Environmental Protection Agency, pursuant to 42 U.S.C. § 6972(b)(2)(F).

6.      On May 28, 2020, Plaintiff-Intervenor moved to intervene in this action as a Plaintiff and filed its proposed Complaint together with the motion to intervene. Plaintiff-Intervenor also alleged violations of Title 7 and Title 9 of the Environment Article, Annotated Code of Maryland as a result of the alleged unauthorized discharge of pollutants to waters of the State.

7.      This Court granted the motion to intervene on the same day, subject to Defendants' right to move this Court to rescind the order as improvidently granted by June 17, 2020. Defendants did not so move, and Plaintiff-Intervenor is now conclusively a party to this litigation, and its proposed Complaint is deemed filed.

8.      On March 31, 2021, the Parties entered into a Consent Decree that, if entered by the Court, requires Defendants, among other things to:

    a.   perform remedial actions at the Luke Paper Mill to eliminate and prevent the discharge of pollutants to the North Branch Potomac River;

    b.   pay Plaintiff-Intervenor a civil penalty in the amount of six hundred fifty thousand dollars ($650,000) to resolve the past violations alleged in the Complaint and agree to pay the Plaintiff-Intervenor stipulated penalties in the event of certain future violations of the law and the Consent Decree;

    c.   pay Plaintiff-Intervenor's attorneys' fees in the amount of forty-two thousand five hundred sixty-two dollars ($42,562);

    d.   pay Plaintiff-Intervenor's past response and oversight costs in the amount of one hundred five thousand eight hundred fifty-five dollars ($105,855);

    e.   pay Plaintiff's attorneys' fees in the amount of two hundred thousand dollars ($200,000);

    f.   pay Plaintiff's oversight costs regarding Consent Decree compliance monitoring in the amount of fifty thousand dollars ($50,000).

9.     The Parties enter into the Consent Decree in full settlement of the above captioned proceedings.

10.    The Parties believe that Defendants' performance of the remedial tasks set forth in the Consent Decree will address the violations at the Luke Paper Mill.

WHEREFORE, the Parties request that the Court enter the Consent Decree and retain jurisdiction over this matter for the purpose of enforcing its terms and conditions. The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the parties in good faith and will avoid further litigation, and that this Consent Decree is fair, reasonable, and in the public interest.

Date:   April 01, 2021

Respectfully submitted,

/s/ *Natalia M. Cabrera*
Natalia M. Cabrera
District of Maryland Bar No: 21331
Environmental Integrity Project
1000 Vermont Avenue, NW, Suite 1100
Washington, DC 20005
Telephone: (202) 469-3151
Fax: (202) 296-8822
ncabrera@environmentalintegrity.org

/s/ *Mary E. Greene*
Mary E. Greene
District of Maryland Bar No: 21356
(signed by Natalia M. Cabrera with
permission of Mary E. Greene)
Environmental Integrity Project
1000 Vermont Avenue, NW, Suite 1100
Washington, DC 20005
Telephone: (202) 263-4449
Fax: (202) 296-8822
mgreene@environmentalintegrity.org

*Counsel for Plaintiff Potomac Riverkeeper,*
*Inc., d/b/a Potomac Riverkeeper Network*

/s/  *Matthew Zimmerman*
Matthew Zimmerman
District of Maryland Bar No: 01222
(signed by Natalia M. Cabrera with
permission of Matthew Zimmerman)
Assistant Attorney General
Office of the Attorney General
Maryland Department of the Environment
1800 Washington Boulevard, Suite 6048
Baltimore, Maryland 21230
Telephone: (410) 537-3452
Fax: (410) 537-3943
matthew.zimmerman@maryland.gov

/s/ *Patricia V. Tipon*
Patricia V. Tipon
District of Maryland Bar No: 28786

(signed by Natalia M. Cabrera with
permission of Patricia V. Tipon)
Assistant Attorney General
Office of the Attorney General
Maryland Department of the Environment
1800 Washington Boulevard, Suite 6048
Baltimore, Maryland 21230
Telephone: (410) 537-3061
Fax: (410) 537-3943
patricia.tipon@maryland.gov

*Counsel for Plaintiff-Intervenor Maryland
Department of the Environment*


*/s/ Tracey B. Eberling*
Tracey B. Eberling
District of Maryland Bar No: 11393
(signed by Natalia M. Cabrera with
permission of Tracey B. Eberling)
Steptoe & Johnson PLLC
1250 Edwin Miller Blvd Ste 300
Martinsburg, WV 25402
Telephone: (304) 263-6991
Fax: (304) 262-3541
tracey.eberling@steptoe-johnson.com

*/s/ Marc Bryson*
Marc Bryson (*admitted pro hac vice*)
(signed by Natalia M. Cabrera with
permission of Marc Bryson)
Steptoe & Johnson PLLC
P.O. Box 1588
Charleston, WV 25326-1588
Telephone: (304) 353-8149
Fax: (304) 353-8180
marc.bryson@steptoe-johnson.com

*Counsel for Defendants Verso Corporation
and Verso Luke LLC*

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| POTOMAC RIVERKEEPER, INC. d/b/a POTOMAC RIVERKEEPER NETWORK, | * |
| | * |
| *Plaintiff*, | * |
| | * |
| MARYLAND DEPARTMENT OF THE ENVIRONMENT | * |
| | *     Civil Action No. 1:20-cv-778 |
| *Plaintiff-Intervenor*, | * |
| v. | * |
| VERSO LUKE LLC, *et al*. | * |
| *Defendants*. | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**CONSENT DECREE**

Plaintiff-Intervenor, Maryland Department of the Environment (the "Department") and Plaintiff Potomac Riverkeeper Network (PRKN) (collectively, "Plaintiffs"), and Defendants Verso Luke LLC and Verso Corporation (collectively, "Defendants"), hereby request that this Court enter this Consent Decree as follows:

**I. FACTUAL BACKGROUND**

1. Defendants own and operate or operated the Luke Paper Mill ("Mill") located in Luke, Maryland, and Beryl, West Virginia, with facilities spanning the North Branch Potomac River, and manufactured paper products at the Mill until it closed on June 30, 2019.

2.      On April 6, 2019, a fisherman reported to the State of Maryland that "pure black waste" was entering the North Branch Potomac River ("River") near the Luke Paper Mill and subsequent investigations revealed black liquid seeping from several locations along approximately 500 feet of riverbank located on Defendants' property into the River.

3.      Maryland's state boundary extends to the low water mark on the southern shore of the North Branch Potomac River.

4.       The North Branch Potomac River is a natural resource of the State of Maryland.

5.      The Department is the agency responsible for the environmental interests of the State of Maryland.

6.      The Department, through regulations, has designated the River as a Use Class I-P waterway, meaning that certain water quality standards apply to protect the stream for water contact recreation, aquatic life, and use as a public water supply.    COMAR 26.08.02.03, .08R.

7.      The black discharge seeping from the Mill is illegally discharging into the North Branch of the Potomac River. Sampling of the material prior to discharge and dilution in the River would exceed applicable limits for dissolved oxygen, pH, Platinum Cobalt Units, arsenic, antimony, lead, and mercury; the material also exhibits high sulfur and high sodium content.  COMAR 26.08.02.03-3A(2), B(1); COMAR 26.08.02.03-2G(1).

8.      The black discharge appears to include constituents that are consistent with pulping liquor—a high pH, caustic, and corrosive material—that was stored in above-ground storage tanks near the seepage.

9.     The West Virginia Department of Environmental Protection (WVDEP) issued an order to the Defendants for alleged violations of West Virginia's aboveground storage tank laws, which order required them to mitigate the ongoing release to the River, in part by emptying the above-ground storage tanks near the seepage.

10.     The black discharge also contains metals that are associated with coal waste, including coal ash. Coal ash was used extensively as fill material in both West Virginia and Maryland including the area in and around the Mill.

11.     Exposure to mercury, lead, antimony, and arsenic in certain concentrations over certain periods of time is associated with adverse health effects for humans and aquatic life.

12.     Plaintiffs allege that bioassay results indicate that the black discharge material is highly toxic to aquatic life.

13.     Plaintiffs allege, that due to the high pH of the black material, direct physical contact with the black material could result in chemical burns.

14.     In an effort to contain the discharge, Defendants installed sump pumps to collect as much of the black liquid as possible as it seeps from the riverbank, but the sump pump system does not recover all of the discharge and cannot operate effectively during certain high flow conditions. Defendants improved the seep collection system in March 2020.

15.     Defendants conducted a preliminary hydrologic investigation of the site that was focused on the former Million Gallon Storage Tank. The plan for this investigation was approved by the Department in July 2019. The field work was completed by Verso's

environmental consultant, TRC, in October of 2019. Verso submitted TRC's report on the preliminary hydrologic investigation to the Department and WVDEP on November 21, 2019.

16.     Defendants evaluated the findings of the hydrologic investigation and reviewed comments from the WVDEP and the Department in January 2020. Defendants drafted and submitted a Remedial Investigation and Corrective Action Plan ("Investigation Plan") in February 2020. The Plan was approved by WVDEP, with amendments, on March 23, 2020.

17.     Defendants also conducted water quality sampling of the North Branch of the Potomac River in January 2020. The report of this sampling was submitted to WVDEP and the Department in February of 2020.

18.     The Investigation Plan identifies steps to be taken by Verso's environmental consultant, TRC, to investigate the source and extent of contamination and also identifies some initial corrective actions to address the source of the seeps.

19.     An addendum (Addendum #1) to the Investigation Plan was submitted in June 2020 and approved by WVDEP. Addendum #1 added additional monitoring wells and river and seep sampling protocols to the investigation plan. Pursuant to the addendum and investigation plan, Defendants have been conducting monthly river and seep sampling to evaluate the impacts of the discharge.

20.     The Investigation Plan included the installation of extraction wells. The impact of these groundwater extraction wells on the discharge to the River is currently being evaluated.

21.    The black discharge is still seeping into the River at the Mill.

22.    Section 7002(a)(1)(B) of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6972(a)(1)(B), provides that "any person may commence a civil action" on his or her own behalf "against any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment" and provides the court with authority in such a case "to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste" referred to in 42 U.S.C. § 6972(a)(1)(B) and to "order such person to take such other action as may be necessary, and to "apply any appropriate civil penalties."

23.    Title 9, Subtitle 3 of the Environment Article, Annotated Code of Maryland, prohibits the discharge of any pollutant into the waters of the State unless authorized by a discharge permit issued by the Department, and also provides that any person who violates any provision of Title 9, Subtitle 3 of the Environment Article or any rule, regulation, order, or permit adopted or issued by the Department thereunder, is liable for a civil penalty of up to $10,000 per violation. Each day a violation occurs is a separate violation.

24.    Title 9, Subtitle 3 of the Environment Article, Annotated Code of Maryland, provides that a person who discharges a pollutant into the waters of the State must reimburse the Department for the reasonable costs incurred by the Department in conducting environmental health monitoring or testing, including the cost of collecting and

analyzing soil samples, surface water samples, or groundwater samples for the purpose of assessing the effect on public health and the environment of the person's discharge.

25.     Title 7, Subtitle 2 of the Environment Article, Annotated Code of Maryland, prohibits the discharge or disposal of a controlled hazardous substance in the State of Maryland except in a controlled hazardous substance facility and in accordance with Title 7, Subtitle 2, and also provides that a person who violates any provision of Title 7, Subtitle 2, or any rule, regulation, order, certificate, or permit adopted or issued under Title 7, Subtitle 2, is liable to pay a civil penalty not exceeding $25,000, to be collected in a civil action. Each day a violation occurs is a separate violation.

26.     Title 7, Subtitle 2 of the Environment Article, Annotated Code of Maryland, provides that the Department is entitled to reimbursement for past, present, and future necessary response costs, including without limitation, investigation and remediation expenses, oversight costs and interest, and the costs of litigation expenses incurred in obtaining reimbursement.

27.     On March 24, 2020, PRKN filed the above-captioned lawsuit seeking relief under § 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), alleging that Defendants' handling, storage, transportation and/or disposal of the wastes generated at the Mill has created, and is continuing to create, an imminent and substantial endangerment to health and the environment within the State of Maryland.

28.     On May 28, 2020, the Department intervened in the above-captioned lawsuit, alleging that the discharge and release of black liquid into the River constitutes a substantial endangerment to the State of Maryland under RCRA, and also alleged violations of Title 9

and Title 7 of the Environment Article of the Annotated Code of Maryland. The defendants contest these violations.

29.     PRKN and the Department have expended resources, including attorney resources, in bringing this suit.

30.     The Department has incurred costs investigating, conducting environmental health monitoring and testing, and otherwise responding to the discharge and release of black liquid into the River.

31.     To avoid protracted litigation of the alleged violations and the corrective action required and to resolve all outstanding allegations, the Parties have reached agreement on the terms of this Consent Decree. Defendants do not admit any liability arising out of the allegations made in the Complaint or in the Complaint in Intervention. The Parties recognize that, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable and in the public interest.

32.     It is the mutual objective of the Department, PRKN, and Defendants (collectively, the "Parties"), by entering into this Consent Decree, to provide for and achieve compliance with the environmental laws addressed by this Consent Decree in an expeditious manner to protect public health and the environment.

33.     The Department believes that this Consent Decree is in the best interests of and will benefit the residents of the State of Maryland.

34.     It is expressly understood that this Consent Decree pertains to the specific alleged violations described herein and that the Parties have made no promises or representations other than those contained in this Consent Decree and that no other promises or representations will be made unless in writing, and the Department makes no representations with regard to any criminal liability for the above-referenced allegations and has no authority over any criminal actions.

35.     Entry of this Consent Decree represents a settlement of contested claims.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

## II.     STATEMENT OF PURPOSE

36.     PRKN and the Department have brought this action and filed this Consent Decree to achieve a final and binding remedy and to resolve Defendants' environmental liabilities for contamination at the Site, or that emanated from the Site, and the Parties settle this action and these liabilities by entering into this Consent Decree.  It is the intent of the Department, PRKN, and Defendants to use this Consent Decree to memorialize the process of identifying the extent of contamination at the Site, or that emanated from the Site, and the process of evaluating, determining, and implementing remedial actions for that contamination.  The mutual objective is to protect the public health and the environment.

37.     The "Site" is the contiguous area under the ownership or operational control of the Defendants in Beryl, Mineral County, West Virginia and Luke, Allegany County, Maryland that is subject to remedial actions and injunctive relief herein due to the past and

ongoing release of solid and/or hazardous waste that may present an imminent and substantial endangerment under RCRA in the River.

## III.   JURISDICTION AND VENUE

38.     For purposes of this Consent Decree, the Department, PRKN, and Defendants agree that the Court has jurisdiction over the Parties and over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 6972 (RCRA citizen suit provision).  In addition, the Parties agree that the Court has supplemental jurisdiction over the Department's claims under Title 9 and Title 7 of the Environment Article, Annotated Code of Maryland, pursuant to 28 U.S.C. § 1367.  Venue is proper under 28 U.S.C. § 1391 because the Defendants' acts and omissions leading to contamination of Maryland's resources took place in this judicial district and caused contamination in this judicial district.  Venue is also proper under 42 U.S.C. § 6972(a) because the endangerment allegedly caused by Defendants occurs in this judicial district.

39.     For purposes of this Consent Decree, or any action to enforce this Consent Decree, the Parties consent to this Court's jurisdiction over this Consent Decree and consent to venue in this judicial district.

## IV.   WORK TO BE PERFORMED

### A.     Review and Approval Process

40.     All documents required under Section IV (Work To Be Performed) of this Consent Decree to be submitted to the Department ("Submittal(s)") shall be made simultaneously to PRKN. Electronic submission to PRKN is preferred, where practicable. Documents shall be submitted in accordance with Section XV (Notification).

41.    The Department shall promptly review each Submittal and may approve, disapprove, or require revisions to the Submittal.

42.    The Department shall notify Defendants and PRKN in writing within thirty (30) days of submission if it determines that a Submittal is substantially deficient or flawed and shall set forth the basis for that determination in such notification.

43.    If the Department requires revisions to a Submittal, Defendants shall provide a revised Submittal within thirty (30) days of the Department's notice.

44.    PRKN shall have the right to review all Submittals and provide the Department and Defendants with written comments within thirty (30) days of PRKN's receipt of the Submittal. The Department and PRKN shall consult and make best efforts to collaboratively resolve any disagreements or concerns that may arise regarding the adequacy of Defendants' Submittals.  To the extent PRKN disagrees with the Department's approval or disapproval of a Submittal, PRKN may invoke Dispute Resolution pursuant to Section XXII (Dispute Resolution).

45.    All plans, schedules, and deadlines set forth in Submittals approved by the Department shall be incorporated by reference into this Consent Decree and enforceable as if fully set forth herein.

46.    Certain remediation work, monitoring and sampling required under this Consent Decree will be occurring in the State of West Virginia and will be subject to West Virginia Laws and Regulations. The Department's approval of Submittals shall not conflict with WVDEP approved plans or violate West Virginia law. However, the Department

reserves the right to require additional work in order to meet the goals of the Corrective Action Plan, as set forth below.

**B. Supplemental Site Investigation (SSI) Plan**

47.     Defendants summarized their investigative and remedial activities in the July 2, 2020 Remedial Investigation Report (the "RI Report") and the results of seep and surface water quality assessments and WET testing in the August 4, 2020 Water Quality Evaluation Report (the "WQE Report"). Defendants have received comments on the RI Report and the WQE Report from the Department and PRKN.

48.     Defendants submitted Remedial Investigation Report Revision 1 (the "Revised RI Report") to the Department and PRKN on November 13, 2020.

49.     Defendants submitted a Site Assessment Work Plan to the Department and PRKN on November 13, 2020.

50.     The SSI Plan shall include the Revised RI Report, a revised version of the WQE Report, and the Site Assessment Work Plan.

51.     Defendants shall submit an SSI Plan for review and approval pursuant to Section IV.A (Review and Approval Process) within thirty (30) days of this Consent Decree's Effective Date, as that term is defined in Section XIV (Effective Date), and shall incorporate all information obtained, actions taken, and follow-up activities identified in the RI Report, as well as all additions and revisions required by the Department in consultation with PRKN.

52.     The SSI Plan shall also include all documentation of the final closure of the former Million Gallon Storage Tank pursuant to West Virginia's Aboveground Storage

Tank Act, all sampling reports for monthly water quality sampling in the North Branch of the Potomac River conducted pursuant to Addendum No.1 to Remedial Investigation and Corrective Action Plan, and all sampling data from the monitoring and extraction wells. The results of all sampling conducted in connection with this remediation that are submitted to the Department, including the weekly sampling of the common sump, as that term is described in the Site Assessment Work Plan, shall be simultaneously submitted to PRKN. All sampling and monitoring undertaken in connection with this remediation, and/or submitted pursuant to this Consent Decree, shall be analyzed using applicable EPA approved groundwater and surface water methods with reporting limits sufficiently sensitive to clearly determine whether the result exceeds the applicable groundwater or surface water standard. There may be instances when complex sample matrices create interferences that make it impossible to quantify a constituent at the level of the applicable standard. In these cases, the laboratory should analyze the samples using the most sensitive reporting limit attainable based on the magnitude of the interference(s).

      **C.**     **Interim Remedial Measures (IRM) Plan**

53.     Defendants shall submit an Interim Remedial Measures (IRM) Plan within thirty (30) days of the approval of the SSI Plan.

54.     This IRM Plan shall include measures that are either already underway or can be implemented promptly to reduce the impacts of contamination to the River and shall include at least continued direct pumping of seeps and extraction well pumping, subject to proper permitting, including any necessary permit modifications to authorize the contaminated groundwater and other site wastestreams for pretreatment pursuant to

12

Verso's pretreatment permit as well as the Upper Potomac River Commission's National Pollutant Discharge Elimination System (NPDES) permit.

55.     The IRM Plan shall include a list of additional identified interim remedial actions.  For each action identified, Defendants shall include a schedule for completion of the work, the approximate cost of undertaking the action, and the expected reduction of pollution achievable through implementation of such action.

56.     Upon approval of the IRM Plan pursuant to Section IV.A (Review and Approval Process), Defendants shall implement all measures set forth in the IRM Plan that are not already underway and make any required changes to ongoing measures as site conditions may dictate.  Defendants shall notify the Department and PRKN should they identify additional interim measures or identify the need to modify previously identified measures.  Such a notification shall be considered a modification of or supplementation to a Submittal subject to the same review and approval process set forth in Section IV.A (Review and Approval Process).  A request to modify or supplement the IRM Plan shall not, however, excuse Defendants from complying with the schedule for completion of approved remedial measures not impacted by the request.

**D.     Corrective Action Plan**

57.     The Corrective Action Plan (CAP) shall include a presentation of all information collected from the implementation of the SSI Plan and the IRM Plan, and all other information collected from the various investigations and assessments conducted up to the date of the CAP, including all sampling and analyses.

58.     "Pollutants of Concern" as used in this Consent Decree shall refer to all the parameters the Parties have agreed upon as relevant to the CAP. Pollutants of concern shall include the following parameters: aluminum, antimony, arsenic, barium, beryllium, biological oxygen demand, boron, bromide, cadmium, calcium, chemical oxygen demand, chloride, chromium, cobalt, color, copper, dissolved organic carbon, dissolved oxygen, fluoride, hardness, iron, lead, lithium, magnesium, manganese, mercury, molybdenum, nickel, pH, phenols, radium 226 and 228, selenium, silver, sodium, specific conductance, sulfate, sulfide, sulfite, sulfur,  temperature, thallium, tin, titanium, total dissolved solids, total organic carbon, vanadium, and zinc.

59.     "Area of Concern" (AOC) shall include any discrete contiguous area on the Site that has or had a probable release of solid and/or hazardous waste or hazardous constituents that are contributing to, or may contribute to, the discharge of pollutants to the River in violation of applicable narrative Maryland Water Quality Standards and numeric water quality criteria for Class I-P waters, as defined in COMAR 26.08.02, for any Pollutants of Concern or that may result in potential endangerment to human health and/or the environment.

60.     The goals for the CAP shall be 1) to identify, investigate, remedy, and/or prevent the potential endangerment to human health and/or the environment from activities involving solid waste, hazardous waste, and/or constituents of such wastes, from AOCs at the Site; 2) to ensure that the work ordered by the Department be designed and implemented to protect human health and/or the environment; and 3)  to eliminate and prevent the discharge of pollutants to the River in violation of applicable narrative

Maryland Water Quality Standards and numeric water quality criteria for Class I-P waters, as defined in COMAR 26.08.02, for any Pollutants of Concern.

61.     Within sixty (60) days of the approval of the SSI Plan, Defendants shall submit for review and approval pursuant to Section IV.A (Review and Approval Process), a comprehensive CAP for the Site, which plan shall include the identification of all AOCs.

62.     Work under the CAP shall include, at a minimum, remediating the AOCs and completing additional tasks, including but not limited to the following:

    a.  Pulping Liquor Fate and Transport Study;

    b.  Elimination of the Discharge to the North Branch of the Potomac River;

    c.  Lime Kiln Investigation and Remediation to be approved by WVDEP pursuant to West Virginia law;

    d.  Pulping Liquor Storage Tank Closure, Removal, and Remediation to be approved by WVDEP pursuant to West Virginia's Aboveground Storage Tank Act and Regulations;

    e.  Ash Lagoon Closure in accordance with a closure plan approved by WVDEP;

    f.  Potential further Investigation to achieve the goal of the CAP at the Lime Kiln area and Ash Lagoon, pursuant to this Consent Decree, as directed by the Department, in consultation with PRKN; and

    g.  Water Quality Assessment.

63.     Each of the AOCs and additional tasks included in the CAP shall contain schedules for completion of work. Defendants shall commence work remediating the

AOCs and completing the additional tasks no later than thirty (30) days after approval of the CAP.

### E.    Additional Work

64.    The Department, in consultation with PRKN, may determine that additional work is necessary to meet the purposes of this Consent Decree if the corrective actions or investigation identified in Defendants' Submittals prove insufficient to meet the goals of the CAP as set forth in Paragraph 60. If the Department determines that additional work is necessary, it shall notify the Parties in writing and specify the basis for its determination.

65.    Defendants shall have the right to meet and confer with the Department and PRKN to discuss the additional work.

66.    If required by the Department, Defendants shall submit for approval a plan for additional work, subject to the review and approval requirements of Section IV.A (Review and Approval Process), within thirty (30) days of receipt of the Department's notification, unless another time period is agreed to by the Parties.

67.    Upon approval pursuant to Section IV.A (Review and Approval Process), Defendants shall promptly execute the additional work plan.

### F.    Quarterly Progress Reports

68.    Defendants shall submit quarterly progress reports from the Effective Date of this Consent Decree detailing the implementation of the IRM Plan, the CAP, and any additional work required pursuant to Section IV.E (Additional Work).

### G.    Final Confirmation Report

69.    Within ninety (90) days of completion of the activities identified in the CAP, Defendants shall submit a Final Confirmation Report.

70.    The Final Confirmation Report shall include the results of sampling and analysis of the AOCs, demonstrating that the goals of the CAP, as set forth in Paragraph 60, have been met.

71.    The Final Confirmation Report, subject to review and approval pursuant to Section IV.A (Review and Approval Process), shall contain a description of the work completed; the name of the chemicals, constituents, and/or hazardous wastes (accurately identified by the correct hazardous waste code) associated with each AOC; the amount of waste generated during the remediation; the fate of such waste, and photographs showing the remediation.

72.    After consultation with PRKN and review of the Final Confirmation Report, the Department shall provide a written Completion of Work Acknowledgement to Defendants and PRKN if the Department agrees with Defendants' determination that the work is complete. The Department shall provide the Completion of Work Acknowledgement together with its approval of Defendants' Final Confirmation Report.

### H.    Continued Monitoring

73.    Upon completion of the activities identified in the CAP, Defendants shall continue monitoring for three (3) years. The three-year period may be extended if any Pollutants of Concern remain significantly elevated above applicable West Virginia groundwater standards (for groundwater measurements) or Maryland's water quality

criteria for Class I-P Waters as defined in COMAR 26.08.02 (for seeps or instream surface water measurements), as determined by the Department in consultation with PRKN.

74.     Along with the Final Confirmation Report, Defendants shall submit a Monitoring Plan. The Monitoring Plan shall include monitoring of ground and surface water quality, assessing, at a minimum all Pollutants of Concern, as defined in Paragraph 58. The Monitoring Plan shall include proposed sampling locations described in narrative form and identified on a diagram.

75.     The Monitoring Plan shall provide for submission of at least quarterly monitoring reports presenting ground and water quality assessment results to the Department, PRKN, and the WVDEP as set forth in the Section XV (Notification) of this Consent Decree.  Monitoring reports shall identify any deviation from the proposed sampling location.

76.     Defendants shall submit the Monitoring Plan for review and approval pursuant to Section IV.A (Review and Approval Process).

77.     Receipt by Defendants of the Department's Completion of Work Acknowledgement does not relieve Defendants from any additional work the Department, in consultation with PRKN, deems necessary as a result of the Continued Monitoring requirement to achieve the goals of the CAP. Should additional work be identified, Defendants shall submit a plan for review and approval pursuant to Sections IV.A (Review and Approval Process) and IV.E (Additional Work).

### I.    Modification of Work To Be Performed

78.    Any request to modify an approved Submittal shall be done pursuant to the review and approval process in Section IV.A (Review and Approval Process).

79.    Any request to modify work shall not excuse, toll, or suspend any compliance obligation or deadline required pursuant to this Consent Decree and/or as set forth in any approved Submittals during the pendency of the Department's consideration of the request, nor shall it stay the accrual of stipulated penalties unless agreed to by the Parties.

### J.    Additional Necessary Approvals

80.    Nothing in this Consent Decree relieves Defendants of any obligation to obtain any local, State, or federal approvals or permits that may be required to accomplish the work in Section IV (Work To Be Performed). This includes approvals from WVDEP. To minimize potential conflicting direction from State regulators, Defendants shall send Submittals to WVDEP concurrently with submitting these items to the Department and PRKN.

### K.    Notifications of Discharge

81.    Defendants, for so long as they are the permit holder of NPDES Permit MD0001422 or the Pretreatment Permit MDP071687, shall notify the Department and PRKN within twenty-four (24) hours or a time period required by other law or regulation, whichever is sooner, after they become aware of any event that results in any discharge to the River that is not specifically authorized pursuant to NPDES Permit MD0001422 or the Pretreatment Permit MDP071687, including any renewals or modifications of these permits. If Defendants are no longer the permit holder

19

of NPDES Permit MD0001422 or the Pretreatment Permit MDP07168, the Department shall notify PRKN of any event that results in any discharge to the River that is not specifically authorized pursuant to NPDES Permit MD0001422 or the Pretreatment Permit MDP071687, including any renewals or modifications of these permits. Any sampling or other report required by the Department as a result of this notification shall be simultaneously transmitted to PRKN at the time it is submitted to the Department. The notification requirements of this Paragraph shall terminate upon the issuance by the Department of the Completion of Work Acknowledgement.

## V.    ACCESS TO MILL

82.    The Department and any authorized representatives of the Department, including contractors, are authorized to enter the Mill property subject to the rights of quiet enjoyment held by any tenants on the Mill, at all reasonable times for the purposes of, *inter alia*, interviewing Defendants' personnel and contractors performing work under this Consent Decree, inspecting non-privileged records related to the work performed hereunder, reviewing the progress of Defendants in carrying out the terms of the Consent Decree, conducting such tests, sampling, or monitoring as the Department deems necessary, using a camera, sound recording, or other documentary-type equipment, and verifying reports and data submitted to the Department. Defendants shall permit such representatives of the Department to inspect and copy non-privileged records, files, photographs, documents, and other writings, including sampling and monitoring data, that pertain to the work undertaken pursuant to this Consent Decree. Nothing herein shall be interpreted as limiting the inspection authority of the Department under Maryland law. The

Department agrees that it and its representatives will comply with all applicable laws, regulations, ordinances, or procedures related to access to the Mill, including, but not limited to, all security laws, regulations, or procedures, and any site-related health and safety protocols and procedures established by Defendants. Any Department personnel will check in with onsite Verso personnel when they arrive and check out when they leave.

83. To the extent that work required by the Consent Decree, or any plans submitted hereunder, must be conducted on property that is not owned by Defendants or for which a third-party has relevant property rights, Defendants shall use their reasonable best efforts to obtain access agreements from the property right holder(s) as appropriate within thirty (30) days of receipt of notice of the Department approval of any plan submitted hereunder requiring such work. "Reasonable best efforts" shall include, at a minimum, but shall not be limited to, sending a certified letter to the property right holder requesting an access agreement to permit Defendants and the Department to enter such property.

84. In the event that access agreements cannot be obtained within the time period set forth above, Defendants shall promptly notify the Department in writing, indicating all efforts made to obtain such agreements, and the Department may, consistent with its legal authority, assist Defendants in obtaining access. In the event that the Department obtains such access, Defendants shall be obligated to reimburse the Department for any costs judicially awarded or reasonably incurred in exercise of its authority. If the Department does not obtain such access, the relevant approved work to be performed shall be modified with input from all Parties.

85.     Defendants will notify the Department, PRKN, and WVDEP at least five (5) days before engaging in work contemplated in this Consent Decree or plans submitted hereunder unless an emergency makes advance notice impracticable. At the request of the Department or PRKN, Defendants shall allow the Department, PRKN, or an authorized representative of the Department or PRKN to take split or duplicative samples of any sample collected by Defendants pursuant to this Decree. Similarly, at the request of Defendants, the Department and PRKN shall allow Defendants to take split or duplicative samples of any sample collected by the Department or PRKN.  The Department and PRKN shall notify Defendants at least five (5) days before conducting any sampling unless an emergency makes advance notice impracticable.

86.     Nothing herein shall be interpreted as limiting the sampling authority of the Department under any federal or State law or regulation.

## VI.     STIPULATED PENALTIES

87.     Beginning on the Effective Date of this Consent Decree and continuing until the Department provides Defendants a written Completion of Work Acknowledgement, upon thirty (30) days of written demand by the Department, Defendants shall pay stipulated penalties in accordance with the following criteria:  If Defendants fail to meet any deadline or schedule under this Consent Decree, including those set forth in plans incorporated herein, Defendants shall pay $500 per day of non-compliance for the first 1 to 15 days of noncompliance, $1,000 per day of non-compliance between 16 and 120 days, and $5,000 per day of non-compliance thereafter until the requirement is met.

88.     Failure to meet more than one (1) date shall subject Defendants to cumulative penalties for each day that each separate requirement is not met by its due date.

89.      Payment of stipulated penalties shall be made by check payable to the Maryland Department of the Environment and mailed to the following address:  Maryland Department of the Environment, P.O. Box 2057, Baltimore, Maryland 21230-2057.  The following must be noted on the check: MDE v Verso, PCA: 13710, OBJ: 7545, SFX: 408 GL: 0544, MDE Case No. CJ-21-2705.

90.     All stipulated penalties begin to accrue on the date that complete performance was due, or a violation occurs and shall continue to accrue through the final day of noncompliance.  Nothing herein shall prevent the simultaneous accrual of separate stipulated penalties for separate violations of this Consent Decree.

91.     Stipulated penalties shall continue to accrue as provided in this Section during Dispute Resolution pursuant to Section XXII (Dispute Resolution), but need not be paid until thirty (30) days after final resolution of the dispute, including resolution of any judicial appeal.

92.     Except as otherwise expressly set forth in this Consent Decree, none of the stipulated penalties in this Consent Decree shall be construed as an election of remedy or other limitation on the Department's discretion to seek in lieu of stipulated penalties any other remedy or sanction available to it for violations of this Consent Decree or any other violation of State law or regulation not expressly made the subject of this Consent Decree.  The Department's failure to demand any stipulated penalty under this Consent Decree does not constitute a waiver of the Department's right to make such a demand.

93.     Except as otherwise expressly set forth in this Consent Decree, payment of any stipulated penalty shall not relieve Defendants from the obligations imposed by this Consent Decree, or any permit that may be issued or any other statute or regulation, nor shall such payment limit the right of the Department or PRKN to seek enforcement, including all judicially available remedies, of the terms of this Consent Decree or any other statute or regulation.

94.     The Department, may, in its discretion, reduce or waive any stipulated penalty if it determines that noncompliance is due to an event of *Force Majeure* as set forth in this Consent Decree, or for any other reason deemed appropriate by the Department, with input from PRKN.

95.     Failure to pay any stipulated penalty as required by this Consent Decree may result in this case being referred to the State of Maryland's Central Collection Unit ("Central Collection Unit") as a debt owed to the State. The Central Collection Unit is authorized to collect outstanding debts resulting from unpaid penalties. The Central Collection Unit will add a collection fee of 17%, plus interest, to the amount owed by Defendants. In addition, § 3-304(c) of the State Finance and Procurement Article authorizes the Central Collection Unit to report the debt to consumer reporting agencies.

## VII.   CIVIL PENALTIES

96.     As settlement and compromise of this matter, the Department hereby assesses a Civil Penalty in the amount of $650,000.00.

97.     Within thirty (30) calendar days of the entry of this Consent Decree, Defendants shall, jointly and severally, pay to the Department the penalty with a check

made payable to the "Maryland Department of the Environment," and mailed to: Maryland Department of the Environment, P. O. Box 2057, Baltimore, Maryland 21230-2057   The check and any accompanying correspondence must reference MDE v. Verso, PCA: 13710, OBJ: 7545, SFX: 408, GL: 0544, MDE Case No. CJ-21-2705.

98.     An invoice for payment of the penalty will be mailed to the Defendants.  The lack of receipt of an invoice has no effect on Defendants' obligation to make timely payments under the Consent Decree.

99.     Failure to pay any civil penalty as required by this Consent Decree may result in this case being referred to the Central Collection Unit as a debt owed to the State.  The Central Collection Unit is authorized to collect outstanding debts resulting from unpaid penalties.  The Central Collection Unit will add a collection fee of 17%, plus interest, to the amount owed by Defendants.   In addition, § 3-304(c) of the State Finance and Procurement Article authorizes the Central Collection Unit to report the debt to consumer reporting agencies.

## VIII.  ATTORNEYS' FEES

100.    Within 30 days of the Effective Date of this Consent Decree, Defendants will reimburse the Department and PRKN for their reasonable attorneys' fees and costs regarding the respective claims alleged in their Complaints.  Defendants will pay PRKN's counsel, the Environmental Integrity Project (EIP), $200,000.00, as reimbursement for attorneys' fees and past costs, and pay the Department $42,562.00, as reimbursement for attorneys' fees.

## IX.    RECOVERY OF RESPONSE COSTS

### Recovery of Past Response Costs

101.    Defendants agree to reimburse the Department for its past response and oversight costs at the Mill in the amount of $105,855.00.  The Department shall send an invoice to Defendants. Defendants shall pay the amount in the invoice within thirty (30) days of receipt of the invoice.

### Recovery of Future Response Costs

102.    Defendants agree to reimburse the Department for any future response and oversight costs at the Mill up to a maximum of $25,000.00 for the first year after the effective date of this decree and $20,000.00 per year thereafter until the termination of this decree. The Department shall send a quarterly invoice to Defendants with the amount of costs. Defendants shall pay the amount in the invoice within thirty (30) days of receipt of the invoice.

103.    Within 30 days of the Effective Date of this Consent Decree, Defendants further agree to pay PRKN, through its counsel, for oversight costs regarding Consent Decree compliance monitoring, and/or river sampling, in the amount of $50,000.00.

## X.    PERSONS BOUND BY ORDER

104.    This Consent Decree applies to, is binding upon, and inures to the benefit of the Plaintiffs (and their successors, assigns, and designees) and the Defendants (and their successors, assigns, and designees).  This Consent Decree shall be applicable and binding upon any subsequent purchaser(s) of the Mill.  Any change in the ownership of the Mill or

the corporate status of Defendants, including, but not limited to, any transfer of the Defendants' assets or real or personal property shall not alter Defendants' responsibilities under this Consent Decree. Defendants shall condition all contracts or agreements in connection with the transfer of the Mill on compliance with the terms of this Consent Decree. Defendants are obligated to ensure necessary instruction to the employees regarding the employee's scope of work involving compliance with this Consent Decree and laws and regulations applicable to the Mill.

105.  Defendants shall provide at least fifteen (15) days in advance written notice to the Department and PRKN prior to the filing of any petition or the commencement of any proceeding arising under the Bankruptcy Code, 11 U.S.C. 1101 *et seq.*

## XII.  RELEASE

106.  Upon the full completion of all of the obligations set forth in this Consent Decree, the Department and PRKN agree to refrain from pursuing any civil enforcement action against Defendants for violations described in this Consent Decree arising out of the facts or circumstances recited in this Consent Decree. The Department and PRKN reserve, and this Consent Decree is without prejudice to, all rights against Defendants with respect to the following matters: (a) civil and administrative enforcement actions for violations that occur after the date of execution of this Consent Decree unless those violations are subject to stipulated penalties or other remedies pursuant to this Decree; (b) civil and administrative enforcement actions for violations existing at the time of the Consent Decree that are not described herein, including violations that may be discovered during work performed pursuant to this Consent Decree; (c) criminal enforcement actions; or (d)

violations of any other State law or regulation that do not arise out of the facts or circumstances recited in this Consent Decree.

107.   It is expressly understood that this Consent Decree pertains to the civil violations described herein, and that the Plaintiffs have made no promises or representations other than those contained in this Consent Decree and that no other promises or representations will be made unless in writing.  The Department has made no promises or representations with regard to any criminal liability for the above-referenced violations and has no authority over any criminal actions.

108.   Notwithstanding any other provision of this Consent Decree, no action or decision by the Department or any authorized representative of the Department pursuant to this Consent Decree shall constitute final agency action giving rise to any right of judicial review prior to the Department's initiation of a judicial action to enforce this Consent Decree, including an action for penalties or an action to compel Defendants' compliance with the terms and conditions of this Consent Decree.

109.   Nothing in this Consent Decree shall limit the authority of the Department to issue any orders or to take any action it deems necessary to protect public health, safety, or the environment.

110.   All factual information provided by the Defendants to the Department that forms the basis of this Consent Decree is to the best of their knowledge. To the extent that any of the factual information that is material to this Consent Decree provided by the Defendants is not true and accurate, the Department and PRKN reserve the right to declare

this Consent Decree null and void and to seek any available legal, equitable, administrative and/or judicial remedies.

## XIII.  THIRD PARTIES

111.   Defendants and Plaintiffs intend that nothing in this Consent Decree shall be construed as a release or covenant not to sue any third party not a signatory to this Consent Decree.  Nothing contained in this Consent Decree shall affect any right, claim, cause of action or defense of any party hereto with respect to third parties. The Parties specifically reserve any and all rights, defenses, claims, demands, and causes of action, which the Parties may have against any third parties relating in any way to the subject matter of this Consent Decree.

112.   This Consent Decree does not and is not intended to create any, or limit existing, rights, claims, or benefits for any third party.  No third party shall have any legally enforceable rights, claims, or benefits under this Consent Decree. No act of performance by the Parties, nor forbearance to enforce any term of this Consent Decree by the Department or PRKN, shall be construed as creating any rights, claims, or benefits for any third party.

113.   Neither the terms nor the conditions of this Consent Decree, nor any act of performance by the Parties, shall collaterally estop the Department in any other proceeding with any third party not a signatory to this Consent Decree.

## XIV.  EFFECTIVE DATE

114.   The Department and PRKN shall execute this Consent Decree following Defendants' execution. This Consent Decree shall become effective as a contract upon

execution by all Parties ("the Effective Date").  This Consent Decree shall become effective as a Court Order upon entry by the U.S. District Court Judge.

## XV.    NOTIFICATION

115.    Unless otherwise specified, all workplans, reports, correspondence, approvals, notices, or other submissions required by or relating to this Consent Decree shall be submitted via e-mail or, upon request, by one of the following methods: (a) hand delivery; (b) first class mail; or (c) overnight mail by private courier.  In the event of a change to any of the contacts listed below, the party making the change shall notify the other contacts below within ten (10) days of the change. Notice shall be sent to the following:

The Department

Scott Boylan, Division Chief, WSA Compliance Program

Ed Dexter, Administrator, Solid Waste Program

Brian Coblenz, Chief, Compliance Division

Office of the Attorney General

Matthew Zimmerman

Patricia Tipon

PRKN

Mary E. Greene, Environmental Integrity Project

Natalia M. Cabrera, Environmental Integrity Project

Phillip Musegaas, Potomac Riverkeeper Network

West Virginia Department of Environmental Protection

Joe Sizemore

Chance Chapman

<u>Defendants</u>

Marc Bryson, Steptoe & Johnson PLLC

Armando Benincasa, Steptoe & Johnson PLLC

Jeff Maule, Verso Corporation

Legal Department c/o St. John Daugherty, Verso Corporation

## XVI.  GENERAL PROVISIONS

116.  Each undersigned representative of the Parties to this Consent Decree certifies that he or she is fully authorized by the party to enter into and execute the terms and conditions of this Consent Decree and to legally bind such party to this Consent Decree.

117.  Defendants agree to undertake and complete all actions required by the terms and conditions of this Consent Decree.  In any action by the Department or PRKN to enforce the terms of this Consent Decree, Defendants consent to and agree not to contest the authority or jurisdiction of the Department or PRKN to issue or enforce this Consent Decree, and agree not to contest the validity of this Consent Decree or its terms or conditions. Defendants agree this Consent Decree is a contract and final order enforceable in a judicial forum.

118.  This Consent Decree is not intended to be nor shall it be construed to be a permit.  Defendants acknowledge and agree that the Department's approval of the work and/or work plan does not constitute a warranty or representation that the work and/or work plan will achieve the required cleanup or performance standards.  Compliance by

31

Defendants with the terms of this Consent Decree shall not relieve Defendants of their obligation to comply with any other applicable local, State, or federal laws and regulations.

119.    In the event that Defendants fail to comply with any provision of this Consent Decree, including but not limited to failure to complete the work or pay the civil penalty or any stipulated penalties demanded hereunder, the Department shall have the right to seek any and all legal and equitable remedies available to it for any such failure, and all other provisions of this Consent Decree shall remain in full force and effect.

120.    This Consent Decree is the entire agreement between the Department, PRKN, and the Defendants in this case.  This Consent Decree constitutes the complete, final, and entire understanding of the Parties hereto, and they shall not be bound by any terms, conditions, covenants or representations not expressly herein contained.

121.    The Parties represent that prior to signing this Consent Decree, each has read it, understood its terms and conditions, and consulted with counsel, and that each party has voluntarily signed it.

122.    This Consent Decree may be executed in any number of counterpart originals, each of which shall be deemed to constitute an original agreement, and all of which shall constitute one agreement.  The execution of one counterpart by any party shall have the same force and effect as if that party had signed all other counterparts.

123.    This Consent Decree shall be construed without regard to any presumption or other rule requiring construction against the party causing the Consent Decree to be drafted.

124.    This Consent Decree is governed by, and interpreted according to, the laws of the State of Maryland without regard to conflict of laws principles.

## XVII.  SUBSEQUENT MODIFICATION

125.    The terms of this Consent Decree are contractual and not mere recitals. This Consent Decree contains the entire agreement of the Parties and shall not be modified by any prior oral or written agreement, representation, or understanding. This Consent Decree may only be modified by the mutual written agreement of all the Parties.  Upon approval by the Court, this Consent Decree is not only contractual but constitutes a court order.  Any modification, other than minor modifications made through written agreement of the Parties, must be approved by the Court in writing.

## XVIII.  SEVERABILITY

126.    If any provision or authority of this Consent Decree or the application of this Consent Decree to any party or circumstance is held by any judicial or administrative authority to be invalid, the application of such provision or authority to other parties or circumstances and the remainder of this Consent Decree shall not be affected thereby and shall remain in full force.

## XIX.  TERMINATION

127.    Except for the Release contained in Section XII (Release), this Consent Decree shall terminate and be of no further force and effect upon the occurrence of the following events: (a) the Defendants' payment of the full civil penalty as set forth in Section VII (Civil Penalties); (b) the Defendants' payment of all stipulated penalties that may be demanded by the Department under this Consent Decree; (c) the Department's

determination, with input from PRKN, that Defendants have completed all obligations set forth in and contemplated by the scope of this Consent Decree between the Department, PRKN, and the Defendants; (d) the payment of agreed upon attorneys' fees as set forth in this Decree; and (e) the completion of any agreed upon SEP. The Department's approval of the Final Confirmation Report, pursuant to Section IV.G (Final Confirmation Report) of this Consent Decree, the issuance of a Completion of Work Acknowledgement, and the completion of Continued Monitoring pursuant to Section IV.H (Continued Monitoring), shall constitute the Department's determination that Defendants have completed all obligations under this Consent Decree. Notwithstanding the foregoing in this Paragraph, the Parties may terminate this Consent Decree at any time by mutual written agreement and the approval of the Court.

## XX.  RECORD RETENTION

128.   Defendants will retain all documents, including paper and electronic files, relating to this matter for at least three (3) years after termination of this Consent Decree.

## XXI.  FORCE MAJEURE AND EXCUSABLE DELAY

129.   Defendants shall perform the requirements of this Consent Decree in the manner and within the time limits set forth herein, unless the performance is delayed by events or circumstances arising from causes not reasonably foreseeable or beyond the reasonable control of Defendants, which cannot be avoided or overcome by due diligence and which delays or prevents performance in the manner or by a date required by this Consent Decree.

130.    Circumstances beyond the reasonable control of Defendants include earthquake, flood, hurricane, severe weather or other act of God, war, riot, injunction, fire, pandemic, and compliance with any law, rule, or Decree of any governmental body either existing now or hereafter created that conflicts with the requirements or obligations of this Consent Decree.  Such circumstances do not include increased costs of performance, changed economic circumstances, normal inclement weather, or failure to obtain federal, State, or local permits unless Defendants have made timely and complete application for such permits.

131.    The mere existence of the novel coronavirus and COVID-19 in the states in which the work contemplated by this Consent Decree and plans submitted hereunder does not excuse performance.  Defendants must take all reasonable steps to mitigate any delay that may occur as a result of the novel coronavirus or COVID-19.  Delays attributable to the novel coronavirus or COVID-19 may only constitute a force majeure where Defendants could not reasonably have taken the known circumstances associated with COVID-19 into account when developing plans and implementation schedules.

132.    Within ten (10) business days after becoming aware that an event Defendants believe constitutes an unforeseeable event or circumstance beyond their reasonable control may prevent or delay performance of an obligation under this Consent Decree, Defendants shall notify the Department and PRKN of such event. Defendants' notification shall describe in detail the precise cause or causes of the delay, the anticipated length of the delay, the measures taken and to be taken by Defendants to prevent or minimize the delay, and a timetable by which those measures will be implemented.  Defendants shall adopt all

reasonable measures to avoid or minimize any such delay. Defendants shall include in the notification a request to extend the deadline associated with any obligation under this Consent Decree whose performance may be prevented or delayed by unforeseeable events or circumstances beyond Defendants' reasonable control.

133. Failure by Defendants to comply with the notice requirements set forth in the preceding Paragraph constitutes a waiver of Defendants' right to request an extension of the applicable deadline associated with an obligation to be performed under this Consent Decree.

134. If the Department determines, with input from PRKN, that the event or anticipated event which has caused or will cause the delay constitutes an unforeseeable event or circumstance beyond the control of Defendants, the time for performance hereunder shall be extended for an appropriate period of time as determined by the Department, with input from PRKN, but not less than a period of time substantially equal to the length of the necessary delay, and any stipulated penalty shall not accrue. The Department shall inform Defendants in writing of its approval or denial and provide PRKN a copy of such notification.

135. In the event the Department, with input from PRKN, and Defendants cannot agree that a delay or failure has been or will be caused by a force majeure or Excusable Delay event or if there is no agreement on the length of the extension, the dispute shall be resolved in accordance with Section XXII (Dispute Resolution).

## XXII. DISPUTE RESOLUTION

136.   The dispute resolution procedures of this Section shall be the exclusive mechanism for the Parties to raise and resolve disputes arising under or with respect to this Consent Decree.  Nothing herein shall be construed to prohibit the Department or PRKN from exercising any other remedy available at law or in equity to enforce the terms of this Consent Decree.

137.   Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the Department, PRKN, and Defendants in an attempt to resolve the dispute in a good faith and expeditious manner. A dispute shall be considered to have arisen when one party sends all other parties a written Notice of Dispute. Electronic mail is the preferred delivery method for a Notice of Dispute to the Parties.

138.   The Parties shall have thirty (30) days following receipt of a Notice of Dispute to reach agreement.  The Parties shall have the right to jointly meet during this thirty (30) day period.  If the Parties cannot reach agreement on the disputed issue, the Department shall serve on the disputing party a written statement setting forth its proposed resolution of the dispute within fifteen (15) days after expiration of the initial thirty (30) day period.  The dispute shall be resolved in accordance with the Department's proposed resolution unless, within thirty (30) days after receipt of such proposed resolution, the disputing party files a petition for resolution of the dispute with the Court.  Any such petition shall describe the nature of the dispute and the disputing party's proposal for

resolution of the dispute. The Department and the non-disputing party shall have thirty (30) days after service of such petition to file a response to the petition.

139. The Court shall have exclusive and continuing jurisdiction to issue any Decree or resolve any dispute arising between or among the Parties with respect to matters within the scope of this Consent Decree. With respect to the resolution of any dispute pursuant to a petition to the Court, the Court shall resolve the dispute in accordance with applicable law, deciding for itself the extent to which it should defer to any administrative determination by the Department with respect to any matters of fact or law, but in no event shall the Court be precluded from holding evidentiary hearings, considering testimony, or otherwise making determinations of fact if it deems such to be appropriate.

## XXIII.  RESERVATION OF RIGHTS

140. The signing of this Consent Decree and each Party's consent shall not limit or otherwise preclude the Department from taking additional action pursuant to the powers granted to it under State and federal law to address violations of laws or regulations not otherwise addressed by this Consent Decree, or to reduce or eliminate risks to public health or the environment that were not known to the Department at the time of approval of this Consent Decree or at the time of approval of work to be performed hereunder.

141. PRKN reserves, and this Consent Decree is without prejudice to, all rights against Defendants with respect to violations of any other State or federal law not alleged in PRKN's complaint filed in this action. Nothing in this Consent Decree limits the right of PRKN to participate in public hearings or submit comments regarding a proposed permit

issued after entry of this Consent Decree, or to challenge any proposed permit's terms.

PRKN reserves the right to enforce the terms of this Consent Decree. *And, the Clerk is directed to close this case.*

**IT IS SO DECREED AND ORDERED this** _1st_ **day of** _April_ _____,
**2021:**

_Ellen L. Hollander_

Ellen Lipton Hollander
United States District Judge

Signature Page for Consent Decree in *Potomac Riverkeeper Inc., et al. v. Verso Luke LLC, et al.*, Civil Action No: 1:20-cv-778.

FOR THE MARYLAND DEPARTMENT OF THE ENVIRONMENT

3-31-2021
DATE

Lee Currey
Director
Water & Science Administration

3/31/2021
DATE

Kaley Laleker
Director
Land & Materials Administration

Approved as to form and legal sufficiency this 31st day of March, 2021.

Matthew Zimmerman
Assistant Attorney General

Patricia V. Tipon
Assistant Attorney General

Signature Page for Consent Decree in *Potomac Riverkeeper Inc., et al. v. Verso Luke LLC, et al.*, Civil Action No: 1:20-cv-778.

FOR THE POTOMAC RIVERKEEPER NETWORK:

3/31/21
DATE

Mary E. Greene
Deputy Director
Environmental Integrity Project
Counsel for PRKN

3/31/21
DATE

Natalia M. Cabrera
Staff Attorney
Environmental Integrity Project
Counsel for PRKN

Signature Page for Consent Decree in *Potomac Riverkeeper Inc., et al. v. Verso Luke LLC, et al.*, Civil Action No: 1:20-cv-778.

FOR THE DEFENDANTS:

2/31/21
DATE

Randy J. Nebel, President and Chief
Executive Officer, Verso Luke, LLC

3/31/21
DATE

Randy J. Nebel, President and Chief
Executive Officer, Verso Corporation

3/31/21
DATE

Marc C. Bryson
Armando Benincasa
Ancil Ramey
Steptoe & Johnson PLLC
Counsel for Defendants

42